UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| SANICA SHELTON, JENNIFER RUSSELL, and ROXANN JOHNSON, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 1:05-cv-756-JDT-WTL |
| FAMILY DOLLAR STORES OF INDIANA, LP, | ) ) ) ) | |
| Defendant. | ) ) | |

**ENTRY ON MOTIONS FOR SUMMARY JUDGMENT (Doc. Nos. 107, 111, 114)[1]**

Plaintiffs, Sanica Shelton, Jennifer Russell, and Roxann Johnson, all former employees of Defendant, Family Dollar Stores of Indiana, LP, allege that Defendant failed to properly pay them for overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and failed to pay them wages due in violation of the Indiana Wage Payment Statute, Ind. Code § 22-2-5 *et seq.*, and the Indiana Wage Claims Statute, Ind. Code § 22-2-9 *et seq.*  Family Dollar moves for summary judgment. The motions are fully briefed.  The court decides as follows.

**I.      Requests to Strike**

Family Dollar asks the court to strike the Plaintiffs' belated designation of evidence, including Ms. Shelton's affidavit for which she submitted an even more

---

[1]   This Entry is a matter of public record and will be made available on the court's web site.  However, the discussion contained herein is not sufficiently novel to justify commercial publication.

belated signature page, and the Plaintiffs' "Statement of Undisputed Material Facts" and "General Facts".  It also requests that the court deem admitted all of Family Dollar's "Statements of Material Facts Not in Dispute".

Local Rule 56.1 requires the party opposing a summary judgment motion to serve and file a brief that includes a section labeled "Statement of Material Facts in Dispute," responding to the movant's "Statement of Material Facts Not in Dispute."  This is accomplished "by identifying the potentially determinative facts and factual disputes which the nonmoving party contends demonstrate that there is a dispute of fact precluding summary judgment."  S. D. Ind. L.R. 56.1(b).  The facts are to "be supported by appropriate citations to discovery responses, depositions, affidavits, and other admissible evidence either already in the record or contained in an appendix to the brief."  *Id.*  The rule authorizes the court to "assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts: are specifically controverted in the opposing party's 'Statement of Material Facts in Dispute' by admissible evidence . . . ."  S.D. Ind. L.R. 56.1(e).  The court may excuse the failure of strict compliance with the rule where to do so is in the interests of justice or for good cause.  S.D. Ind. L.R. 56.1(i).

While the Plaintiffs' noncompliance with Local Rule 56.1 hampered Family Dollar's ability to reply and makes identification of the genuine issues of material facts more challenging, in the interest of deciding the case on the merits, the court will consider those facts asserted in the Plaintiffs' "Statement of Undisputed Material Facts" where such facts are properly supported as required by the procedural rules.  It seems

that some of the assertions in the "Statement of Undisputed Material Facts" respond to Family Dollar's asserted material facts, though not number by number (that is not required by the Local Rule). The court is not inclined to consider the facts asserted in the "General Facts" section, however. They are not material.

Regarding the Plaintiffs' Submission of Designation of Evidence, Plaintiffs did not seek or receive an extension of time within which to file their evidentiary materials which were filed one day late. However, Plaintiffs have offered the explanation that the materials were not submitted timely because of technical difficulties with their counsel's scanner. Family Dollar claims no prejudice from the one-day delay and the interests of justice counsel in favor of excusing the belated filing. The court thus gives the Plaintiffs the benefit of considering their belated designations of evidence, again, in the interest of deciding the case on the merits.

Regarding Ms. Shelton's affidavit, the signature page came even later in time. However, the affidavit fails to raise a genuine issue of material fact. For example, Ms. Shelton states: "I was told that once you had attended the Retail 101 meeting that your obligation to attend was completed." (Shelton Aff. ¶ 8.) The statement is hearsay. Ms. Shelton does not identify who told her this and offers no facts to suggest that the person had authority to do so on behalf of Family Dollar.

Accordingly, the court **declines** Family Dollar's requests to strike portions of the Plaintiffs' brief and designation of evidence and to deem facts admitted by the Plaintiffs.

However, Plaintiff's counsel is advised that in the future the court may strictly enforce the Local Rule which is intended for the benefit of all parties as well as the court.

## II.    Factual Background

Family Dollar owns and operates a chain of retail merchandising stores.  (Cathy Liggett Aff. ¶ 3.)  Family Dollar has an overtime policy for its non-exempt employees which is contained in its Employee Handbook.  (Liggett Aff. ¶ 8; Heck Aff. ¶ 3; Russell Dep. 25; Johnson Dep. 42, 44.)  The policy provides that "[g]enerally, overtime is paid for work in excess of 40 hours in any work week, and overtime is payable at one and a half times the regular hourly wage."  (Liggett Aff. ¶ 8; Shelton Dep. Ex. 5; Russell Dep. Ex. 3.)

Family Dollar also has a vacation policy that is set forth in the Employee Handbook.  (Liggett Aff. ¶ 18.)  Under the policy, Family Dollar provides paid vacation to all eligible, regular, full-time associates who work an average of thirty or more hours per week during the months of October through March.  (Liggett Aff. ¶ 16; Shelton Dep. Ex. 5; Johnson Dep. 41, 44, 46, Ex. 7 at 7.)  An employee who worked more than six months but less than one year is eligible for three days paid vacation.  (Shelton Dep. Ex. 5.)  The policy also provides that eligible employees will not be paid for vacations earned "if they are discharged for cause. 'Cause' is defined as the failure of the employee to comply with company policies, procedures, and reasonable directives, and the determination of cause is solely in the discretion of the company."  (Liggett Aff. ¶ 17; Shelton Dep. Ex. 5; Johnson Dep. 41, 44, 47, Ex. 7 at 7.)

4

The Family Dollar Time Card Report shows the time an employee clocks in and clocks out, and any modifications of an employee's time, such as changes resulting from an employee forgetting to clock in or out.  (Liggett Aff. ¶ 11, Ex. 3; Johnson Dep. 98; LeBlond Aff. ¶ 11.)  The Family Dollar Weekly Payroll Timesheet purportedly tracks an employee's time worked and purportedly reflects the day and time of day the employee worked and the total hours worked in a week.  (Shelton Dep. 88, Ex. 12; Russell Dep. Ex. 9; Heck Aff. ¶ 6.)  An employee's paycheck is calculated based on the information contained in the time sheet.  (Heck Aff. ¶ 7).

### A.  Sanica Shelton

In August 2000, Plaintiff Sanica Shelton began her employment as a cashier at Family Dollar Store 2187 in Beech Grove, Indiana.  After a few months she was promoted to assistant manager and she became a full-time employee in December 2000.  Ms. Shelton was a non-exempt employee, meaning she was to be paid for any overtime worked.  (Cathy Liggett Aff. ¶ 9.)  Ms. Shelton received a copy of the Employee Handbook.  (Shelton Dep. 32, 39-40, Ex. 4.)

Ms. Shelton's employment with Family Dollar was terminated on January 29, 2004.  (Liggett Aff. ¶¶ 19-20; Shelton Dep. 123, Ex. 17.)  Cathy Liggett, Family Dollar District manager, met with Ms. Shelton about missing a store meeting.  Ms. Liggett believed that when they met Ms. Shelton acted loud and inappropriately - being irate, yelling and screaming at her.  (Liggett Aff. ¶ 19; Shelton Dep. 120.)  As a result, Ms. Liggett terminated Ms. Shelton's employment for unprofessional conduct and

insubordination.  (Liggett Aff. ¶ 20; Shelton Dep. 123, Ex. 17.)  Ms. Shelton admits that she did not attend the meeting in question.  (Shelton Dep. 120.)

While Ms. Shelton worked at Store 2187, the store was open to the public from 9:00 a.m. to 8:00 p.m. Monday through Saturday and from 10:00 a.m. to 5:00 p.m. on Sunday.  (Liggett Aff. ¶ 6; Shelton Dep. 37.)  Employees at the store clock in at the store's cash register by utilizing a clock number.  (Liggett Aff. ¶ 7.)  Ms. Shelton clocked in and out during her employment.  (*See* Shelton Dep. 110.)  She was taught how to make changes in the computer system if an employee's time, including her own, was incorrect.  (*Id.* at 113-14, Ex. 16.)

Ms. Shelton testified that she consistently opened the store three days a week and would clock in at 8:00 a.m. in order to open the store at 9:00 a.m.  She also testified that if the store was closed properly the night before, then it took one hour or one and one-half hours to open the store.  (Shelton Dep. 63-64.)  The closing process would not start until after all the customers were out of the store.  (*Id.* at 77.)  Everyone who helped close the store had a set time they had to clock out.  (*Id.* at 102.)  Ms. Shelton testified that the 1st and 3rd of the month were particularly busy and it would take up to two hours just to clean the store at closing.  (*Id.* 164.)  During the Christmas season, employees had to work longer hours since the store was open longer; Ms. Shelton worked off the clock during that period since they were not allowed overtime.  (*Id.* 51.)  Ms. Shelton stated that the store had to be clean or you could be fired.  (*Id.* at 75.)

6

Ms. Shelton generally cannot articulate what days she allegedly worked hours off the clock or worked overtime, nor can she articulate how many hours she allegedly worked off the clock and/or overtime, or how much money she is allegedly owed. (Shelton Dep. 92-96, 98-99, 101.)  However, the record viewed in Ms. Shelton's favor reveals a few particular occasions when she worked off the clock.[2]  On August 1, 2002, the inventory truck was unloaded between 1:00 p.m. and 3:15 p.m.; Ms. Shelton signed the truck out.  (Driver Trip Rep. 8/1/02.)  The time sheets show that she worked from 8:06 a.m. until 2:04 p.m. that day.  In June or July of 2002, Ms. Shelton worked off the clock cleaning the store because she had to do inventory as well.  (Shelton Dep. 97, 102.)

Ms. Shelton alleges that she was not paid for overtime hours worked and that she worked hours off the clock.  She seeks damages for overtime pay under the FLSA and pay for hours worked off the clock, earned vacation hours, and sick hours.  (Pl. Sanica Shelton's Resp. Def.'s Interrog. No. 6.)[3]

---

[2]  The Defendant contends that Ms. Shelton contradicts herself by identifying these particular dates while also claiming that she cannot articulate which days she worked overtime. An inconsistency does exist, but by and large, Ms. Shelton cannot point to any particular day and contest the hours worked as reflected on the time sheets.  These inconsistencies may affect her credibility, but that evaluation can be done only by the trier of fact.

[3]  The Second Amended Complaint reasonably could be read to assert a state law claim for pay for time worked off the clock (Sec. Am. Compl. ¶¶ 17, 20, 47-51), but Ms. Shelton's Responses to Interrogatories seem to narrow the claims to overtime, vacation pay, and sick pay.  When asked to state the nature and amount of all damages or other relief she seeks, Ms. Shelton did not mention any off-the-clock time that would not be overtime.  Similarly, Plaintiffs' Amended Rule 26 Initial Disclosures claims damages for overtime hours not paid, vacation hours, and sick hours, as well as liquidated damages.

**B.  Jennifer Russell**

Jennifer Russell began her employment with Family Dollar in September 2004. (Russell Dep. 28-29, Ex. 2.)  She worked at several different store locations, but her claims are based on events at the Washington and Tibbs location where she worked as assistant manager and a non-exempt employee.  (*Id.* at 35, 49-50, 195.)  In late October 2004, Ms. Russell transferred to the Washington and Tibbs store.  (Russell Dep. 185.) This store's hours were 9:00 a.m. to 8:00 p.m. Monday through Saturday and 10 a.m. to 6 p.m. Sundays.  (*Id.* at 52.)  The store had extended hours during the holiday season. (*Id.* at 52-53.)  Ms. Russell was not certain when the extended hours began, but thought it was right after Thanksgiving.  (*Id.* at 53.)

Ms. Russell typically worked the closing shift.  (*Id.* at 36.)  Closing duties included "fronting and facing the store," which means pulling everything to the front of the shelves to make them appear full and straightening the store; taking "down" the two registers, counting them out, and doing associated paperwork; counting the safe; entering the figures into the computer in the office; and locking the doors and ensuring no one was hiding in the back room.  (Russell Dep. 40, 42.)  While Ms. Russell was scheduled to complete her shift one-half hour after the store's closing time (*id.* at 183), she claims it took her longer than that to complete her job duties (*id.* at 44).  She states that it took her anywhere from forty-five minutes to one hour to do what needed to be done.  (*Id.*)  Her second night of closing – the night before Halloween – she was written-up by store manager Delena Pierce for not leaving the store properly cleaned.  (Russell Dep. 46, 187.)  Ms. Russell claims that after Halloween, Ms. Pierce told her that she

had to clock out one-half hour after the store closed and work off the clock.  (*Id.* at 39, 66, 184-85.)[4]  Prior to this, she did not work off the clock.  (*Id.* at 185.)  Ms. Russell understood that if the store was not clean and she was written up again, she would be fired.  (*Id.* at 47.)

On Sundays when Ms. Russell opened, she was scheduled to come in at 9:30 a.m., one-half hour before the store opened.  (Russell Dep. 36.)  The opening duties included recounting the safe, getting the registers ready to go, and taking the deposit to the bank.  (*Id.*)  Ms. Russell claims that it took longer than one-half hour to complete these duties, so she sometimes came in at 9:00 a.m. or 9:15 a.m., but did not clock in until 9:30 a.m.  (*Id.* at 38-39.)  She states that Pierce told her if she needed more time to complete her opening duties, this is how it had to be done.  (*Id.* at 38.)[5]

Ms. Russell states that she filed this lawsuit "because . . . every night I worked there, I stayed anywhere from half an hour to 45 minutes to an hour off the clock[.]  When I was going into the store on Sundays and opening, I was going in on my time to get that store ready."  (Russell Dep. at 73; *see also id.* at 196-97.)  She adds that the

---

[4]  The time sheets reveal that from November 1, 2004, until her termination in February 2005, Ms. Russell clocked out past the thirty minute mark on at least 32 of the 39 occasions when she closed.  (Russell Dep. Ex. 9.)  For example, on the following Sundays when the store closed at 6:00 p.m., she clocked out more than thirty minutes after close:  November 14, 2004 - 7:24 p.m.; January 9, 2005 - 6:44 p.m.; and February 6, 2005 - 6:40 p.m.  (*Id.*)  These occasions seem to cut against her allegation that she was instructed to clock out one-half hour after the store closed.

[5]  Though Ms. Russell alleges she was told to clock in one half-hour before opening on Sundays and perform any other opening duties on her own time, of the five Sundays she appears to have opened after Halloween, she clocked in more than thirty minutes before the store opened every time.  (Russell Dep. Ex. 9.)

majority of the time when she closed she worked off the clock between one-half hour to forty-five minutes and during the holiday season the majority of the time she was there for "a good hour" off the clock.  (*Id.* at 75-76.)  Ms. Russell claims that she usually "averaged" a half hour off the clock.  (*Id.* at 190, 197.)

Ms. Russell testified that she had no reason to dispute the entries recorded on the time sheets.  (Russell Dep. at 92-102, Ex. 9.)  On cross-examination and re-direct, she testified that the time sheets did not accurately reflect when she actually left the store, but she could not identify which days she worked off the clock or how much time she worked off the clock.  Ms. Russell's employment with Family Dollar was involuntarily terminated on February 19, 2005, over a cash register shortage dispute.  (*Id.* at 66, 69-70.)  She alleges that she was not properly paid for overtime hours and for all hours worked.

### C. Roxann Johnson

Roxann Johnson began working for Family Dollar in June 2003 at its East 25th Street store as a cashier.  (Johnson Dep. 14, 18, 26, 29, Ex. 2.)  The store hours were 9 a.m. to 8 p.m. on the weekdays and Saturday, and 10 a.m. to 5 or 6 p.m. on Sundays, with extended hours during the holidays.  (*Id.* at 34-35.)  Ms. Johnson also held a full-time job with First Student as a school bus driver Monday through Friday.  Her work hours with First Student were 6 a.m. to 9:30 a.m. and 1:00 or 1:30 p.m. to approximately 5 p.m.  (*Id.* at 18.)  Because of her job at First Student, Ms. Johnson typically worked at Family Dollar from 9:30 a.m. until mid-afternoon and then returned to the store at

10

around 5 p.m. and would close the store.  (*Id.* at 25, 29.)  She also worked on weekends

and started at 9:00 a.m. or might work in the afternoon and then close.  (*Id.* at 29.)

When asked whether it took about one-half hour to close the store, Ms. Johnson

answered, "no," and explained that she would be at work until 10:00 or 10:30 p.m.  (*Id.*

at 50.)

Ms. Johnson claims that she was never off work for three consecutive days until

just before her termination.  (*Id.* at 79.)  She claims that she worked July 10, 11, and 12,

2003.  (*Id.*)  The time sheets show that she did not work then and that there were other

occasions when she did not work for three consecutive days.  (*Id.*, Ex. 8.)  She claims

she "worked a lot of overtime" and worked off the clock (*id.* at 81), but is unsure of the

dates (*Id.*).

When Ms. Johnson applied for employment with Family Dollar on June 16, 2003,

she indicated that she was interested in part-time employment.  (Johnson Dep. Ex. 1.)

Her New Hire Family Dollar Personnel Action Form designated her as a regular, part-

time employee.  (*Id.* Ex. 2.)  Family Dollar considered her a part-time employee.  (*Id.* at

42.)  Ms. Johnson initially testified that she was a part-time employee with Family Dollar

(Johnson Dep. 18), but later testified that she was a full-time employee because she

worked 40 hours a week.  (*Id.* at 42.)  Her employment was terminated by Family Dollar

on July 9, 2004.  (*Id.* at 102.)  The reason given for her termination was "had a very bad

attitude."  (*Id.* at 103.)  She claims it was because she "wouldn't play with [Eugene, the

store manager] like he played with everybody else."  (*Id.*)  However, she admitted that "I

probably did have a bad attitude."  (*Id.*)

11

Ms. Johnson brings claims for overtime pay and pay for hours worked off the clock.  She also makes a claim for vacation pay and sick pay.  She is unable to articulate which days she worked overtime, how many hours of overtime she worked, or how much in wages she claims she is owed.  (*Id.* at 72, 77, 82-84, 92-96.)

## III.    Discussion

Family Dollar seeks summary judgment against all Plaintiffs on all claims.  The Plaintiffs oppose the motions.

### A.  Summary Judgment Standard

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, affidavits and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When ruling on a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  At summary judgment, a nonmovant who bears the burden of proof on an issue cannot rest on mere allegations, but must go beyond the pleadings and demonstrate a genuine issue of material fact. *See Warsco v. Preferred Tech. Group*, 258 F.3d 557, 563 (7th Cir. 2001).

### B.  Federal Claims

The FLSA requires that employers pay hourly employees at a rate one and a half times their regular rate for any time worked in excess of forty hours in a week.  29 U.S.C. § 207(a)(1); *Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 369 (7th Cir. 2005).  Family Dollar contends that a plaintiff who sues for unpaid overtime must come forward with "definite and certain" evidence to prove that she performed work for which she was not properly compensated.  This places too heavy a burden on the plaintiff. The Supreme Court set forth the appropriate standard for cases such as this in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946):

> An employee who brings suit under . . . [the FLSA] for . . . unpaid overtime compensation . . ., has the burden of proving that he performed work for which he was not properly compensated. The remedial nature of this statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee. Due regard must be given to the fact that it is the employer who has the duty under . . . [the FLSA] to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy. . . .

*Id.* at 686-87.  *Anderson* held:

> where the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated *and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference*.

*Id.* at 687 (emphasis added).  If the employee discharges her burden, then the burden shifts to the employer to come forward with "evidence of the precise amount of work

13

performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence."  *Id.* at 687-88.  If the employer offers no such evidence, then damages may be awarded to the employee, even though only approximate.  *Id.* at 688.

Therefore, in cases where an employee claims that the employer failed to keep proper and accurate records as required under the FLSA, the employee need not offer "definite and certain" evidence that she performed work for which she was not properly compensated.  *Anderson*, 383 U.S. at 687.  None of the cases cited by Family Dollar nor any other case of which this court is aware holds otherwise.  *See Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 69-70 (2d Cir. 1997) (holding that district court acted consistently with *Anderson* and properly placed the burden of inadequate record keeping on the employer in crediting evidence of damages offered by Secretary that was over-inclusive in relation to the under-inclusive evidence offered by employer); *Reeves v. Int'l Tel. & Tel. Corp.*, 616 F.2d 1342, 1351-52 (5th Cir. 1980) (concluding trial court adhered to *Anderson* when it found the employer did not keep adequate records and employees were ordered to report incomplete and deflated overtime hours and court thus calculated overtime due based on "the rough computations of [employee's] subconscious mind")[6]; *Harper v. Wilson*, 302 F. Supp. 2d 873, 882-83 (N.D. Ill. 2004) (holding security guard offered sufficient proof, namely, his own testimony, that he worked overtime hours for which he was not properly compensated);

---

[6]  The employee estimated he worked an average of 74.5 hours per week.  The factfinder based the calculations of overtime due on an average workweek of 60 hours.  The Fifth Circuit found this to be a fair and just approximation under the facts.  *Id.* at 1352.

*Jerzak v. City of South Bend*, 996 F. Supp. 840, 845 (N.D. Ind. 1998) (stating the general rule but not addressing it). In cases in which the employer has not kept proper and accurate records, an employee carries her burden of proving she performed overtime work for which she was not properly compensated if she has sufficient evidence that she has in fact performed work for which she was not properly compensated and has sufficient evidence that supports a just and reasonable inference as to the amount and extent of work.

Family Dollar also contends that the Plaintiffs' self-serving testimony and unsupported allegations, standing alone, are insufficient to allow their claims to survive summary judgment. Again, the cases cited are inapposite. *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005), held that the district court did not err in granting summary judgment to the employer on the employee's FLSA overtime claim where her claim "consisted of her unsubstantiated assertions" that she was required to falsify time sheets and her employer permitted her to work overtime. The court said that plaintiff "offered no factual allegations *at all* to substantiate her claim, . . . presented *no* evidence of the amount or the extent of hours she worked without compensation[, and] . . . presented *no* evidence that [her employer] was aware that she worked overtime hours without compensation." *Id.* at 441 (emphasis in original). *Brown v. Family Dollar Stores of Indiana*, No. 1:04-cv-2015-LJM-WTL, Ord. Def.'s Mot. Summ. J. (S.D. Ind. 6/22/05), relied on *Havill*; yet, Chief Judge McKinney acknowledged that where the employer fails to keep proper records as required by the FLSA, the employee need only provide evidence from which the amount of hours worked may be inferred.

15

*Id.* at 8.  In *Brown*, the plaintiff did not allege that the defendant's records were not in compliance with the FLSA.  *Id.* at 9.

In *Gilbert v. Old Ben Coal Corp.*, 407 N.E.2d 170 (Ill. Ct. App. 1980), the appellate court reviewed the trial court's findings based on *evidence at trial* – the plaintiffs' mere estimates of hours worked – and concluded that the finding that the plaintiffs failed to prove the amount of overtime was not contrary to the manifest weight of the evidence.  The court said that one could infer that the mere estimates were not sufficient evidence to show the amount and extent of work as a matter of just and reasonable inference.  *Id.* at 175.  It also noted the trial court's view that there was insufficient evidence to decide whether the plaintiffs' estimates were reasonable and creditable.  *Id.*  Here, although the ultimate question is whether the Plaintiffs can prove their FLSA claims, the question right now is whether they have presented enough evidence to reach a jury, which makes *Gilbert* distinguishable.

In *Ponce v. Tim's Time, Inc.*, No. 01 C 6123, 2005 WL 2266604 (N.D. Ill. Sept. 14, 2005), the court found that with one exception, each plaintiff's testimony regarding the amount of hours they worked was sufficient by itself to meet the plaintiff's burden and shift the burden of production to the defendant.  *Id.* at *2.  One plaintiff offered only his conclusory assertion that he "worked between 48 and 50 hours per week."  *Id.* at *2-3.  The others identified particular hours and the days of the week that they worked.  *Id.*[7]

---

[7]  One testified that he worked as a chef seven days a week from 5:00 a.m. to 2:00 p.m., taking a short lunch break.  Another testified that he worked nine-hour days, six days a week, and as a cook worked ten-hour days on Sundays and nine-hour days five days of the week.  A third testified that he worked from 11:00 a.m. to 9:00 p.m. six days a week, and occasionally seven days a week.  *Id.* at *2.

Defendant cites *Beard v. Hall Drive-Ins, Inc.*, No. Civ. 1:04CV202, 2005 WL 17055622 (N.D. Ind. July 20, 2005), in which summary judgment was granted the employer on an "off-the-clock" case.  The plaintiff argued that she should be paid for any time worked, even if she did not clock in and even if her employer had not agreed to pay her for the time she worked before her scheduled shift.  *Id.* at *11.  The evidence established that the employee decided on her own that she needed more time to prepare for breakfast, and had obtained permission to arrive early, but not to clock in until her shift began. The evidence was that this arrangement was for the employee's convenience, "so she wouldn't feel as rushed during the start of her shift," *id.* at *12, and there was no evidence that the employer agreed to pay her for any work performed before the start of her shift or that she was required to arrive before her shift.  *Id.*

Family Dollar misapprehends the appropriate standard.  While "self-serving affidavits without factual support in the record will not defeat a motion for summary judgment," *Unterreiner v. Volkswagen of Am., Inc.*, 8 F.3d 1206, 1210 (7th Cir. 1993) (quotation omitted), the Seventh Circuit has "long held that a plaintiff may defeat summary judgment with his or her own deposition."  *Paz v. Wauconda Healthcare & Rehab. Centre, LLC*, 464 F.3d 659, 664 -65 (7th Cir. 2006); *see also Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006) ("most affidavits are self-serving, as is most testimony, and this does not permit a district judge to denigrate a plaintiff's evidence when deciding whether a material dispute requires trial") (quotation omitted).  Family Dollar quotes from *Peters v. Gilead Sciences, Inc.*, No. 1:04-cv-1338-JDT-TAB, 2006 WL 3365666, at *5 (S.D. Ind. Nov. 20, 2006) ("conclusory allegations . . . without

17

support in the record, do not create a triable issue of fact"), but the court's concern there with conclusory allegations was the lack of personal knowledge.

In this case the Plaintiffs have produced more than merely self-serving affidavits. Though they may not be able to recall how many times they worked overtime and were not properly paid, or how much time they worked off the clock any given day or week, their testimony supports a reasonable inference that they did in fact work overtime for which they were not properly compensated.[8]  For example, Ms. Shelton testified:

> Q: Okay. Your testimony is, is that there were times that you worked off the clock but you just can't articulate what day it was?
> A: Exactly.
> Q: Or what week it was or what month it was?
> A: Exactly.

(Shelton Dep. 106.)[9]  Ms. Russell claimed that although she was scheduled to complete her closing shift one-half hour after the store's closing time, it actually took her longer than that – up to sixty minutes –  to complete her duties.  (Russell Dep. 40, 42, 44.) She also testified that she stayed between half an hour to forty-five minutes off the clock

---

[8]  In its reply briefs, Family Dollar challenges whether Plaintiffs have established that they were working during the entire time that they were clocked in.  (*See, e.g.*, Reply Br. Shelton 14.)  It did not make this argument in its moving papers and it is considered waived for summary judgment purposes.  Nor did Family Dollar base its motion for summary judgment on any claimed lack of knowledge on its part that Plaintiffs were working overtime or were not properly compensated.  This argument also is considered waived for summary judgment.

[9]  The time sheets reflect that some weeks Ms. Shelton worked less than forty hours. For example, August 25-31, 2002, she worked 29.75 hours (Ex. 12 at 1) and September 8-14, 2002, she worked 29 hours.  (*Id.* at 4.)  Though it may be difficult for her to prove that she worked more than forty hours these weeks, her burden is not necessarily insurmountable.

every night she worked.  (*Id.* at 73.)  Ms. Russell added that she worked off the clock

every night she closed the store (*id.* at 196-97), and that her store manager Delena

Pierce told her that any work that needed to be done after the end of her shift had to be

done off the clock.  (*Id.* at 39, 66, 76-77.)[10]  Ms. Russell also testified that when she

opened the store, she sometimes came in fifteen to thirty minutes early, but did not

clock in until the start of her shift.  She said that Ms. Pierce told her this was what she

should do if she needed more time to complete her opening duties.  (Russell Dep. 36,

38, 39.)  Though Ms. Johnson's case may be thin, she has offered evidence that she

worked overtime and claims she is owed overtime pay.  She testified that the store

closed at 8:00 p.m. during the week and she often closed.  She also testified that she

would be at work until 10 or 10:30 p.m.  The time sheets do not reflect that she worked

that late.  For example, the time sheets show that she clocked out at 8:24 p.m. on

Monday, July 7, 2003, at 8:40 p.m. on Wednesday, July 9, 2003, and at 8:35 p.m. on

Monday, August 4, 2003.  She also testified that she worked on July 10, 11, and 12,

2003, but the time sheets do not show that she worked.  The Plaintiffs also have

presented sufficient evidence to allow a just and reasonable inference – to create a

triable issue – as to the amount and extent of overtime for which they were not properly

compensated.

---

[10]   Despite this, time sheets show that Ms. Russell clocked out past the half-hour mark on many of the closing shifts she worked and clocked in more than one-half hour before the store's opening time.  For examples see the entries for November 14, 2004, January 2, 2005, January 9, 2005, and February 6, 2005.  (Russell Dep. Ex. 9.)  Can it be said that Ms. Russell's testimony is utterly discredited by the time records such that no reasonable jury could find in her favor?  *See Scott v. Harris*, slip op. at 7-8 (U.S. April 30, 2007) (No. 05-1631).  In the court's view, the answer is no.  Perhaps she will be able to explain these records and her testimony.

Family Dollar points to its time sheets as evidence of the precise amount of work performed and claims to have evidence to negate the reasonableness of any favorable inference that could be drawn from the Plaintiffs' evidence.  But it is not this court's role to judge this evidence at this stage.  "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder."  *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007) (quotation and citations omitted).  The determination of whether Family Dollar has proven the amount of work performed and negated the reasonableness of any inferences to be drawn from the Plaintiff's evidence awaits trial.[11]

The Defendant contends that Ms. Russell worked so few hours each work week at issue that any alleged off-the-clock time would not put her over forty hours for the week.  This question should go to the jury.  The time sheets show, for example, that for the week of October 31, 2004, Ms. Russell worked 36.34 hours, she worked 39.41 hours the week of November 7, 2004, and she worked 35.44 hours the week of December 5, 2004.  (Russell Dep. Ex. 9.)  Depending on the amount of off-the-clock time that the jury may find Ms. Russell to have worked each week, it cannot be said that

---

[11]   The time sheets may accurately reflect the amount of work performed.  But Plaintiffs have alleged, and offer evidence, that they do not reflect all the hours of work.  They claim they worked "off the clock" which work, as the description suggests, would not be reflected on the time sheets.  While there is evidence that Ms. Shelton modified her own hours on Defendant's computer system, this fact does not necessarily negate the reasonable inference that she often worked "off the clock".  None of the Plaintiffs could point to a particular day or week on the time sheets even though they challenge the accuracy of the hours reported.  This is not too surprising since only Ms. Russell may have kept contemporaneous time records.  (She claims to have tracked her hours in a personal journal, but she has not produced the journal.)  This inability is not fatal to their claims; but they may face a very difficult burden in persuading the trier of fact as to the amount of overtime for which they worked but were not properly paid.

she is entitled to absolutely no overtime pay.  The court declines to parse her claim

week by week for purposes of summary judgment.

### C. State Law Claims

Indiana's Wage Claims Statute and Wage Payment Statute apply to different

categories of claimants.  The Indiana Supreme Court specifically said:

> The Wage Claims Statute references employees who have been
> separated from work by their employer and employees whose work has
> been suspended as a result of an industrial dispute.  I.C. § 22-2-9-2(a)(b).
> By contrast, the Wage Payment Statute references current employees and
> those who have voluntarily left employment, either permanently or
> temporarily. I.C. § 22-2-5-1(b).

*St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699, 705 (Ind. 2002)

(holding that Wage Payment Statute rather than Wage Claims Statute applied to current

employee's wage dispute with his employer).  The Plaintiffs, former employees

terminated from their employment by Family Dollar, can proceed under the Wage

Claims Statute only; the Wage Payment Statute is inapplicable.  Therefore, Family

Dollar will be granted summary judgment on all claims under the Wage Payment

Statute.

Claimants who proceed under the Wage Claims Statute "may not file a complaint

with the trial court.  Rather, the wage claim is submitted to the Indiana Department of

Labor." *St. Vincent Hosp.*, 766 N.E.2d at 705.  The Commissioner of Labor may refer

claims to the Attorney General who may refer claims to any attorney admitted to the

practice of law in Indiana.  Ind. Code § 22-2-9-4(b); *see Birch v. Kim*,  977 F. Supp. 926,

934 (S.D. Ind. 1997) ("Ind. Code 22-2-9-4 expressly assigns the Commissioner of Labor the duty to enforce the provisions of Chapter 9 and allows the Commissioner to refer wage claims to the Attorney General to initiate actions on behalf of any claimant."). That was done here as the referral letters from the Indiana Department of Labor to Plaintiffs' counsel reflect.  (*See* Pls.' Designation Evid. Ex. M.)

In reply Family Dollar asserts that the referral letters were responsive to several requests for production, but Plaintiffs failed to produce them.  It therefore contends that the letters should be stricken from the record pursuant to Rule 37(d) of the Federal Rules of Civil Procedure.  The court has considered the Requests for Production Nos. 4-7 and 20 as well as the Plaintiffs' Preliminary Exhibit List, referenced in Request No. 20, and disagrees that the referral letters were responsive to any of the requests identified.  Therefore, the request to strike the letters is **denied**.

As for Ms. Shelton's and Ms. Johnson's claims for accrued vacation pay,[12] in *Die & Mold, Inc. v. Western*, 448 N.E.2d 44 (Ind. Ct. App. 1983), it was said:

> An agreement to give vacation pay to employees made before they perform their service, and based upon the length of service and time worked is not a gratuity but rather is in the form of compensation for services. And when the services are rendered, the right to receive the promised compensation is vested, as much as the right to receive wages or other forms of compensation.

---

[12]  Ms. Russell does not make a claim for vacation pay; she concedes she was not entitled to it under Family Dollar's vacation policy.  (Russell Dep. 57)

*Id.* at 46-47.  The court held that the terminated employee was entitled to a pro rata share of his vacation pay.  *Id.* at 48.  However, the court said that had there been an agreement or published policy to the contrary, it would be enforceable.  *Id.* at 47- 48. Numerous other decisions of state courts and federal courts applying Indiana law follow suit.  *See, e.g.*, *Gazarkiewicz v. Town of Kingsford Heights, Ind.*, 359 F.3d 933, 949 (7th Cir. 2004) (holding claim for vacation pay under Wage Payment Statute failed where employee was not entitled to vacation pay at time of discharge pursuant to applicable ordinance); *Williams v. Riverside Cmty. Corrs. Corp.*, 846 N.E.2d 738, 747-48 (Ind. Ct. App. 2006) (holding terminated employee not entitled to accrued vacation pay where she did not meet eligibility requirements in employer's published handbook and policy provided that no accrued vacation pay would be paid to any employee upon involuntary termination).

Family Dollar's vacation policy is published in its Employee Handbook.  Under that policy, any employee discharged "for cause" – defined as the failure of the employee to comply with company policies, procedures, and reasonable directives – will not be paid for vacations earned.  Family Dollar determined that Ms. Shelton did not attend a mandatory meeting and acted inappropriately with Ms. Liggett.  For these reasons, Family Dollar discharged her.  While Ms. Shelton claims that she was told that once she attended the meeting in question that she did not have to attend it again, her evidence is inadmissible hearsay.  Moreover, even if she had properly challenged this justification for her termination, Family Dollar also has offered evidence that she was discharged because of her conduct (insubordination) toward her supervisor, Ms. Liggett.

Ms. Shelton has not offered any evidence to dispute this assertion.  Therefore, Family Dollar has shown that Ms. Shelton was discharged for cause and she is not entitled to vacation pay.

The record establishes that Ms. Johnson is not entitled to vacation pay, either. Like Ms. Shelton, she was discharged for cause.  Family Dollar has offered evidence that it terminated Ms. Johnson because she had a very bad attitude.  Ms. Johnson testified that she probably did have a bad attitude.  Even if her bad attitude was nothing more than her rejection of the store manager's inappropriate conduct, her claim for vacation pay does not survive summary judgment.  Under Family Dollar's vacation policy, only full-time employees, defined as those that worked an average of thirty hours a week from October through March, received vacation pay.  Even when Ms. Johnson's estimates of the amount of time she worked off the clock are viewed most favorably to her, her average hours worked during that period would not satisfy the thirty-hour requirement.  (Her average would be about twenty-five hours.)  For these reasons, Family Dollar is entitled to summary judgment on Ms. Johnson's claim for vacation pay.

Family Dollar's summary judgment motion does not seem to address the claims for sick pay.  Yet it is unclear whether Ms. Shelton and Ms. Johnson are pursuing claims for sick pay.  The parties' attention is directed to *Williams v. Riverside Community Corrections Corp.*, 846 N.E.2d 738, 750 (Ind. Ct. App. 2006) (holding employee not entitled to accrued sick pay upon termination), *trans. denied*, which may provide them guidance in resolving these claims prior to trial.

24

According to Family Dollar, the state law claims for pay for hours worked off the clock fail for the same reason that the FLSA overtime claims fail – an inability to quantify the amount of time for which the Plaintiffs were not paid, to identify the specific dates at issue, and to calculate their related damages.  As explained, Plaintiffs have enough evidence to reach a jury on the overtime claims.  Perhaps they will face a difficult burden in persuading a jury as to the amount of their damages.  Thus, Plaintiffs are entitled to reach a jury on their state law claims for pay for hours worked off the clock.

## IV.     Conclusion

For the foregoing reasons, Family Dollar's requests to strike the Plaintiffs' designations of evidence, "Statement of Undisputed Material Facts," and "General Facts" are **DENIED**; Family Dollar's request to deem admitted its "Statements of Material Facts Not in Dispute" is **DENIED**; and the court **GRANTS IN PART AND DENIES IN PART** the Defendant's Motion for Summary Judgment as to the Claims of Plaintiff Sanica Shelton (Doc. No. 107), the Defendant's Motion  for Summary Judgment as to the Claims of Plaintiff Jennifer Russell (Doc. No. 111), and the Defendant's Motion for Summary Judgment as to the Claims of Plaintiff Roxann Johnson (Doc. No. 114). Family Dollar will be **granted** summary judgment on all claims under the Indiana Wage Payment Statute and on Ms. Shelton's and Ms. Johnson's claims for vacation pay. Final judgment on these eliminated claims will not be entered until the remaining claims are adjudicated.

25

The following claims remain for trial: (1) the claims of all Plaintiffs for unpaid overtime under the FLSA, (2) the claims of Ms. Shelton and Ms. Johnson for accrued sick pay under the Wage Claims Statute, and (3) the claims of all Plaintiffs for unpaid wages for off-the-clock work under the Wage Claims Statute.

A scheduling conference will be set under separate order for the purposes of setting the trial date and related deadlines.

ALL OF WHICH IS ENTERED this 1st day of June 2007.

John Daniel Tinder, Judge
United States District Court

Copies to:

Magistrate Judge William T. Lawrence

Ronald E. Weldy
ABRAMS & WELDY
weldy@abramsweldy.com

Craig Warner Wiley
LITTLER MENDELSON PC
cwiley@littler.com

26